UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JORDAN SHANE PHILLIPS,

        Petitioner,        Case No. 1:18-cv-695

v.        Honorable Gordon J. Quist

CONNIE HORTON,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jordan Shane Phillips is incarcerated with the Michigan Department of Corrections at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan. Following a bench trial in the Kalamazoo County Circuit Court, Petitioner was convicted of first-degree criminal sexual conduct. On September 6, 2016, the court sentenced Petitioner as a third habitual offender to a prison term of 25 to 50 years.

        On June 22, 2018, Petitioner timely filed his habeas corpus petition raising two grounds for relief, as follows:

    I.    Defendants conviction of criminal sexual conduct, first degree, person under 13, defendant 17 or older, MCL 750.520B2B is against the great weight of the evidence and the evidence was insufficient to convict beyond a reasonable doubt.

    II.    A new trial is warranted because defendant's trial attorney was ineffective by failing to request to admit the photos taken by the nurse, Mr. Sweet, which could have exonerated the defendant; and the defendant was forced and coerced to waive his jury trial right by his trial attorney.

(Pet., ECF No. 1, PageID.8, 11.)  Respondent has filed an answer to the petition (ECF No. 8) stating that the grounds should be denied because they are either not cognizable on habeas review, or lack merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are either not cognizable on habeas review or lack merit.  Accordingly, I recommend that the petition be denied.

## Discussion

**I.  Factual allegations**

On February 18, 2016, Petitioner's neighbor asked if he and his girlfriend would keep an eye on her children while she went out.  (Trial Tr., ECF No. 9-4, PageID.163-164, 207-208, 220.)  Petitioner said he peeked his head into the apartment once.  (*Id*., PageID.221.)  The neighbor's six-year-old daughter said that he did more than that.  She said that he came into her room and touched her "private part"—under her clothing, but over her underwear—and that it burned when he moved his finger back and forth.  (*Id*., PageID.179-181.)  A sexual assault nurse examiner saw an area of redness on the victim's inner labia that was consistent with digital penetration.  (*Id*., PageID.193-194.)

Petitioner waived his right to a jury trial.  (Settlement Conference Tr., ECF No. 9-3, PageID.150-153.)  The judge heard testimony from six witnesses: the victim's mother, the victim, the sexual assault nurse examiner, the investigating officer, Petitioner's girlfriend, and Petitioner.  (Trial Tr., ECF N. 9-4, PageID.157.)  The entire trial took only a couple of hours.  (*Id*., PageID.158, 229.)

The judge concluded that the victim was credible and that her story was corroborated by the abrasion found by the sexual assault nurse examiner.  (*Id*., PageID.241-242.)

The judge concluded Petitioner and his girlfriend were not credible, in part because they had lied to the police. (*Id.*, PageID.242-243.)

The first-degree criminal sexual conduct statute calls for a mandatory minimum sentence of 25 years if the victim is under the age of 13 years and the perpetrator is over the age of 17 years. Mich. Comp. Laws § 750.520b(2)(b). Accordingly, the court sentenced Petitioner to a 25-year minimum sentence. (Sentencing Tr., ECF No. 9-5, PageID.252.) The judge exercised his discretion to set a maximum sentence of 50 years. (*Id.*)

Petitioner, with the assistance of counsel, appealed his conviction to the Michigan Court of Appeals, raising the same issues he raises in this Court. (Pet'r's Br., ECF No. 9-6, PageID.280.) By unpublished opinion issued December 12, 2017, the court of appeals rejected Petitioner's challenges and affirmed the trial court. (Mich. Ct. App. Op., ECF No. 9-6, PageID.255-260.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court, again raising the same issues. (Appl. for Leave to Appeal, ECF No. 9-7, PageID.323-324.) By order entered May 1, 2018, the supreme court denied leave to appeal. (Mich. Order, ECF No. 9-7, PageID.320.) This petition followed.

## II. AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their

4

adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

**III.    Discussion**

    **A.    Great weight of the evidence**

Petitioner argues that his conviction is against the great weight of the evidence. The Michigan Court of Appeals concluded otherwise. (Mich. Ct. App. Op., ECF No. 9-6, PageID.257-258.)

The assertion that a conviction was against the great weight of the evidence does not state grounds for habeas corpus relief. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). The Michigan courts apply the great-weight-of-the-evidence standard to determine whether to grant a new trial. *See People v. Lemmon*, 576 N.W.2d 129, 137 (Mich. 1998). This question is distinct from the due-process guarantee offended by insufficient evidence and "does not implicate issues of a constitutional magnitude." *Id.* at 133 n.8. As a consequence, a "weight of the evidence claim" is purely a matter of state law and is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a state's criminal judgment

susceptible to a collateral attack in the federal courts."); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ( "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *accord Chatman v. Warden Ross Corr. Inst.*, No. 2:10-cv-1091, 2013 WL 1663919, at *10 (S.D. Ohio Mar. 26, 2013); *Underwood v. Berghuis*, No. 1:08-cv-642, 2011 WL 693 8471, at *15 (W.D. Mich. Aug. 8, 2011) ("Since a 'weight of the evidence claim' is purely a matter of state law, it is not cognizable on habeas review."). Because this Court lacks authority to review a state court's application of its own law, the state-court determination that the verdict was not against the great weight of the evidence is final.

    **B.**    **Sufficiency of the evidence**

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988). The *Jackson* standard applies to bench trials the same way it applies to jury trials. *See, e.g., United States v. Bronzino*, 598 F.3d 276, 278 (6th Cir. 2010).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

First-degree criminal sexual conduct occurs when a person engages in sexual penetration with another person and the other person is under 13 years of age. Mich. Comp. Laws § 750.520b. Sexual penetration occurs when any part of a person's body (or an object) intrudes, however slightly, into the genital opening of another person's body. Mich. Comp. Laws § 750.520a(r). In evaluating the sufficiency of the evidence, the court of appeals followed *Jackson*'s direction—it considered the evidence, in a light that favored the prosecution, against those elements:

> In this case, there was ample evidence for the trial court to convict defendant of CSC-I. It is undisputed that the victim was under the age of 13 and that defendant was over the age of 17. Defendant therefore argues that there was insufficient evidence to prove that sexual penetration occurred; however, evidence of sexual penetration was established by the victim's testimony. As stated earlier, the testimony of a victim alone, without corroborating evidence, can constitute sufficient evidence to establish defendant's guilt under MCL 750.520b. Although a victim's testimony does not need to be corroborated, MCL 750.520h, the prosecution offered evidence from other witnesses to support the victim's testimony. First, the victim's mother testified that the victim told her that defendant "touched her." Second, the sexual assault nurse testified that she performed an examination on the victim, and the victim told her that defendant had touched her

7

>genitals. She further testified that she noticed redness on the inside of the labia going towards the vaginal vault that was consistent with digital penetration. This redness, if triggered by a digit rubbing that area, would cause a patient to experience burning at the time, which is exactly what the victim testified to during trial. Viewed in the light most favorable to the prosecution, sufficient evidence supported defendant's conviction of CSC-I.

(Mich. Ct. App. Op., ECF No. 9-6, PageID.258.)

Petitioner does not challenge the appellate court's identification of the evidence that supported the verdict. Instead, he invites the Court to view the evidence differently. Rather than looking to the nurse's testimony that the "redness" was consistent with digital penetration, Petitioner asks the Court to focus on the nurse's testimony that other things could have caused the "redness." (Pet., ECF No. 1, PageID.8.) Rather than looking to the victim's testimony that she knew it was Petitioner, Petitioner asks the Court to focus on the fact that it was dark and that she saw only a shadow. (*Id.*) Rather than relying on the testimony of the victim and the nurse that the trial court found credible, Petitioner asks the Court to rely on his testimony and the testimony of his girlfriend—testimony that the trial court found incredible. (*Id.*) In short, Petitioner asks the Court to turn the *Jackson* standard on its head—to look at the evidence in a light that favors him, to draw inferences that favor him, and to make credibility findings that favor him. Petitioner fails to show that the state appellate court's determination of the sufficiency issue is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on his sufficiency claim.

### C. Ineffective assistance of counsel

Petitioner also claims that his counsel rendered ineffective assistance in two respects: (1) counsel failed to obtain or see or introduce into evidence photographs of the injuries sustained by the victim; and (2) counsel coerced Petitioner into waiving his right to a jury trial. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test

8

by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing

9

on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

### 1.      Photographs of the victim's injuries

Petitioner contends that photographs of the victim's injuries would have exonerated him and demonstrated inconsistencies in the evidence used to convict Petitioner. (Pet., ECF No. 1, PageID.11.) The court of appeals was not convinced:

> Defendant argues that defense counsel was ineffective for not admitting into evidence photographs taken during the sexual assault nurse's examination to show whether the victim was actually injured in the vaginal area. Defendant also asserts that defense counsel did not ask to see the photographs. But defendant only supports this claim with his own affidavit that simply states that his attorney did not admit the photographs that could have allegedly exonerated him. Furthermore, defendant offers no proof to show that defense counsel did not review the photographs in discovery. Additionally, defense counsel may have purposefully chosen not to admit the photographs to avoid contesting the young victim's injuries. Instead, the attorney may have wanted to highlight the fact that there were other potential reasons for the redness. For example, the sexual assault nurse testified that the redness could have been caused by underwear or some other innocent reason. The nurse acknowledged that she did not know definitively the origin of the redness. Therefore, it is reasonable to assume that defense counsel wanted to focus on the cause of the injury and not whether the child was actually injured. This Court must "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *LeBlanc*, 465 Mich at 578 (citation omitted). The fact that the strategy chosen did not work does not constitute deficient performance. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).
>
> Furthermore, defendant has failed to prove that admitting the photographs would have changed the result of this trial. In fact, the photographs themselves likely corroborate the testimony of the victim by showing that her injuries were consistent with digital penetration as testified by the sexual assault nurse. The testimony of a victim alone, without corroborating evidence, can constitute sufficient evidence to establish a defendant's guilt under MCL 750.520b. With such compelling evidence present in this case, defendant has not established a reasonable likelihood that the outcome of the trial would have been different but for the alleged deficiency. *Musser*, 259 Mich App at 221.

(Mich. Ct. App. Op., ECF No. 9-6, PageID.259.)

Petitioner must show that the appellate court's position constitutes an unreasonable determination that counsel satisfied *Strickland*'s deferential standard. The entirety of Petitioner's argument on appeal is as follows:

> In this case, defendant's trial attorney failed to admit the photos or ask to see the photos taken by Ms. Sweet, the SANE Nurse. The photos could have exonerated Mr. Phillips. The trier of fact should have viewed the photos to see any redness and confirm such redness existed and to what extent.

(Pet'r's Appeal Br., ECF No. 9-6, PageID.297.) The court of appeals posited that counsel may have seen greater value in having the nurse examiner testify regarding various potential causes for the redness and her inability to determine the actual cause—testimony that Petitioner's counsel elicited at trial—than to quibble about whether there was redness in the first place.

I find that the court of appeals position is reasonable. The court provides a compelling rationale for counsel's decision to not seek to admit photographs of the victim's injuries. Moreover, Petitioner fails to demonstrate that the court of appeals position is ***unreasonable***; he fails to address the court of appeals determination of the issue in any way. Therefore, Petitioner has failed to show that the court of appeals' rejection of this ineffective assistance claim is contrary to, or an unreasonable application of, *Strickland*, and he is not entitled to habeas relief on the claim.

### 2. Waiver of jury trial

Finally, Petitioner contends that counsel rendered ineffective assistance when counsel "coerced" Petitioner to waive his right to a jury trial. The court of appeals flatly rejected Petitioner contention:

> Defendant has failed to point to anything in the record that would support his claim that he was coerced into waiving his right to a jury trial. Instead, the evidence is to the contrary, as defendant waived his right to a jury trial on the record in open court at the settlement conference on July 25, 2016. A defendant's waiver of his constitutional right to trial by jury must be voluntarily and knowingly made. *People v Godbold*, 230 Mich App 508, 512; 585 NW2d 13 (1998); *People v*

11

> *Reddick*, 187 Mich App 547, 549; 468 NW2d 278 (1991).  MCR 6.402(B) states the proper procedures for securing a jury trial waiver are as follows:
>
>> Before accepting a waiver, the court must advise the defendant in open court of the constitutional right to trial by jury.  The court must also ascertain, by addressing the defendant personally, that the defendant understands the right and that the defendant voluntarily chooses to give up that right and to be tried by the court.  A verbatim record must be made of the waiver proceeding.
>
> In this case, the trial court followed the appropriate procedure.  First, defendant was informed of his rights and then asked if he had been promised or threatened in any way.  Next, when questioned if waiving the jury trial was his choice, defendant responded, "Yes, your Honor."  Thus, defendant's coercion claim is contrary to the record made in open court.  Although defendant submitted an affidavit stating that he was forced and coerced into making his decision, "a party or witness may not create a factual dispute by submitting an affidavit that contradicts his or her own sworn testimony or prior conduct."  *People v Armisted*, 295 Mich App 32, 49; 811 NW2d 47 (2011).  Because defendant, under oath, freely, voluntarily, and knowingly waived his right to a jury trial, defendant has failed to demonstrate that his trial counsel coerced him to waive his right to a jury trial.

(Mich. Ct. App. Op., ECF No. 9-6, PageID.259-260.)

A criminal defendant's waiver of his right to a jury trial is valid if it was voluntary and intelligent under the circumstances of the case.  *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275, 278 (1942).  Petitioner does not respond to the court of appeals determination that his waiver was voluntary and knowing.  He simply offers his affidavit, which states: "My trial attorney was ineffective by forcing and coercing me to . . . waive my jury trial right and accept a bench trial."  (Affid., ECF No. 9-6, PageID.278.)  Petitioner's after-the-fact, conclusory averment that he was coerced is directly contradicted by his sworn statements at the conference where he requested the waiver.

The colloquy regarding the waiver reads as follows:

THE COURT: It's my understanding, ah, Mr. Phillips, that you understand you have a right to a jury trial and you want to waive that right, is that correct?

THE DEFENDANT: Yes, your Honor.

12

THE COURT: All right. I'm gonna have you sworn in.

THE JUDICIAL AIDE: Raise your right hand, please. Do you swear or affirm the testimony you're about to give will be the truth, the whole truth and nothing but the truth, so help you God?

THE DEFENDANT: Yes, ma'am.

THE COURT: So, just to make sure, you do understand that under the Constitution of the State of Michigan and the Constitution of the United States of America, you have a right to have a trial, not be one person, but of 12 impartial persons. And we would do everything we can to make sure that the jury, ah, would be fairly selected and that they would attentively listen to your trial. On the other hand, you have a right to waive that and you can be tried by the Court. That is, I would sit as the finder of fact, I'll listen to all the evidence, ah, that comes in for each side, I'll weigh the credibility of the witnesses, and then I'll decide whether you're guilty or not at the end of the trial. And, ah, you could choose to do that, and it's my understanding that's what you want to do?

THE DEFENDANT: Yes, your Honor.

THE COURT: You understand that no one can make you waive your right to a jury; you're the only person? The Prosecutor can't make you waive it. I can't make you waive it. Mr. Turpel can't. You have to do this freely and voluntarily if that's what you want to do. Is that how you feel today?

THE DEFENDANT: Yes.

THE COURT: All right. And I will -- given, ah, I've been given a form, do you want to read this into the record then, Mr. Turpel --

MR. TURPEL: Yes, your Honor.

THE COURT: -- and then tell me who signed it?

(At 2:47 p.m., Mr. Turpel retrieves document from Court)

MR. TURPEL: Now, Mr. Phillips, as a Defendant, you understand that you have a right to a jury trial, as the Judge has indicated to you?

THE DEFENDANT: Yes.

MR. TURPEL: Now, it's your desire today, as I understand, to voluntarily waive, which means of your own free will, give up and relinquish, which also means give up, your right to a trial by jury?

THE DEFENDANT: Yes.

MR. TURPEL: And you elect, that means choose, to be tried by the Judge of the court in which this case is pending? In other words, Court A with Judge Giguere.

THE DEFENDANT: Yes.

MR. TURPEL: And you fully understand that under the laws of this State, you have a constitutional right to a trial by jury?

THE DEFENDANT: Yes.

MR. TURPEL: And as the Judge has indicated, also under the Federal United States Constitution --

THE DEFENDANT: Yes.

MR. TURPEL: -- is that correct? And you've signed this document, is that correct?

THE DEFENDANT: Yes, I have.

MR. TURPEL: And we discussed this before you signed it?

THE DEFENDANT: Yes, we did.

MR. TURPEL: Did we talk last week --

THE DEFENDANT: Yes.

MR. TURPEL: Yep. All right.

THE COURT: All right.

(At 2:47 p.m., Mr. Turpel returns document to Court)

THE COURT: Thank you. And, again, no one's promised you anything or threatened you in any way, this is your choice?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. And, ah, I see Mr. Phillips has signed it; Mr. Turpel's verified that. I recognize Mr. Turpel's signature. I see the signature, ah, of Mr. Stein of the Prosecutor's Office. Mr. Stein, do you consent on the record to a waiver of the --

MR. STEIN: Yes, sir. Thank you.

THE COURT: -- of -- Okay. So, the bench trial is okay with you?

MR. STEIN: Yes, sir. Thank you.

> THE COURT: All right. Then, the Court does find that the Defendant has been arraigned and properly advised of the right to a jury trial. He has had the opportunity to consult with counsel, and he's actually met with counsel and discussed this. This waiver has occurred in open court. We've made a record of everything that we've just done. I'm signing the order. I allow you to waive your right to a jury trial.

(Conference Tr., ECF No. 9-3, PageID.150-153.)

The court of appeals determined that, based on Petitioner's sworn statements at the conference, Petitioner's waiver was not coerced. That factual determination is well-supported by the record. That determination is presumed correct. Petitioner presents this Court with no facts which, if true, show that the waiver of his jury trial rights was anything but the product of his own free will. Petitioner's conclusory statement that his waiver was coerced is not clear and convincing evidence sufficient to overcome the presumption of correctness. Accordingly, Petitioner has failed to demonstrate that the Michigan Court of Appeals' determination that counsel was not ineffective—that he did not coerce a waiver—is not contrary to, or an unreasonable application of, clearly established federal law. Therefore, Petitioner is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to

warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated: January 22, 2020 /s/ Ray Kent
Ray Kent
United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).